# IN THE SUPREME COURT OF CALIFORNIA

JEREMIAH SMITH,

Plaintiff and Appellant,

v.

LOANME, INC.,

Defendant and Respondent.

S260391

Fourth Appellate District, Division Two
E069752

Riverside County Superior Court
RIC1612501

April 1, 2021

Chief Justice Cantil-Sakauye authored the opinion of the Court, in which Justices Corrigan, Liu, Cuéllar, Kruger, Groban and Jenkins concurred.

SMITH v. LOANME, INC.

S260391


Opinion of the Court by Cantil-Sakauye, C. J.


Under Penal Code section 632.7, subdivision (a) (hereinafter section 632.7(a)),[1] it is a crime when a person "without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between" a cellular or cordless telephone and another telephone. A violation of section 632.7 also can be pursued civilly and lead to the assessment of damages and other appropriate relief. The issue presented in this case is whether section 632.7 applies to the parties to a communication, prohibiting them from recording a covered communication without the consent of all participants, or whether the section is concerned only with recording by persons other than parties (sometimes hereinafter referred to as "nonparties" to the communication), such as an individual who covertly intercepts a phone call and eavesdrops upon it.

The Court of Appeal concluded that section 632.7 applies only to nonparties and does not forbid a party to a phone call transmitted to or from a cellular or cordless telephone from recording the conversation without the consent of the other party or parties. We reach a contrary conclusion and hold that section 632.7 applies to parties as well as nonparties. This

---

[1] All subsequent undesignated statutory references are to the Penal Code.

interpretation reflects the most sensible reading of the statutory text, is consistent with the relevant legislative history, and advances the Legislature's apparent intent by protecting privacy in covered communications to a greater degree than the Court of Appeal's construction would. Accordingly, we reverse the judgment below and remand the matter to the Court of Appeal for further proceedings consistent with our opinion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a brief phone conversation. Defendant LoanMe, Inc. (LoanMe) extended a loan to the wife of plaintiff Jeremiah Smith. In October 2015, a LoanMe employee called a phone number Smith's wife had provided. Smith answered, on what he asserts was a cordless phone. Smith advised the LoanMe representative that his wife was not at home. The call then ended, 18 seconds after it began.

LoanMe recorded the call. Three seconds into the call, LoanMe caused a "beep" tone to sound. The LoanMe representative on the call did not orally advise plaintiff that the call was being recorded.

In September 2016, Smith brought suit on behalf of a putative class consisting of "[a]ll persons in California whose inbound and outbound telephone conversations involving their cellular or cordless telephones were recorded without their consent by [LoanMe] or its agent/s within the one year prior to the filing of this action." The complaint alleged that the recording of these calls violated section 632.7.

The parties agreed to a bifurcated bench trial for the court to decide whether Smith consented to having the phone call recorded by continuing the conversation after LoanMe activated the "beep" tone. After listening to the call, the trial court agreed

with LoanMe that the tone gave Smith adequate notice that the call was being recorded. The trial court subsequently entered judgment in LoanMe's favor.

When Smith sought review, the Court of Appeal did not delve into the consent issue decided by the superior court. Instead, the reviewing court requested supplemental briefing regarding whether section 632.7 prohibits a party from intentionally recording a communication transmitted to or from a cellular or cordless phone, or whether the section forbids only the intentional recording of such communications by persons other than parties. The Court of Appeal ultimately concluded "that section 632.7 prohibits only third party eavesdroppers from intentionally recording telephonic communications involving at least one cellular or cordless telephone. Conversely, section 632.7 does not prohibit the participants in a phone call from intentionally recording it." (*Smith v. LoanMe, Inc.* (2019) 43 Cal.App.5th 844, 848 (*Smith*).) The judgment was affirmed on this basis. (*Ibid*.)

The Court of Appeal regarded section 632.7 as unambiguously applicable only to nonparties. (*Smith, supra,* 43 Cal.App.5th at p. 851.) It reasoned, "The statute . . . requires that the interception or receipt of the [covered] communication be without the parties' consent. But the parties to a phone call always consent to the receipt of their communications by each other — that is what it means to be a party to the call (or at least that is part of what it means). In this case, for example, LoanMe consented to Smith's receipt of LoanMe's communications ('Is Mrs. Smith there?'), and Smith consented to LoanMe's receipt of Smith's communications ('No.'). Consequently, the parties to a phone call are incapable of violating section 632.7, because they

do not intercept or receive each other's communications without all parties' consent." (*Ibid.*)

The Court of Appeal also saw its interpretation of section 632.7 as harmonizing this section with sections 632.5 and 632.6, which also address privacy issues implicated by the use of cellular and cordless phones. Sections 632.5 and 632.6 provide for liability when a person "maliciously and without the consent of all parties to the communication, intercepts . . . [or] receives" a communication transmitted between devices including a cellular phone (§ 632.5, subd. (a) (hereinafter section 632.5(a))) or a cordless phone (§ 632.6, subd. (a) (hereinafter section 632.6(a))). The Court of Appeal determined that these sections cannot reasonably be applied to the parties to a phone call, for reasons including the fact that it was "not clear what it would mean for one party to receive the other party's communications *with malice.*" (*Smith*, *supra*, 43 Cal.App.5th at p. 852.) Because sections 632.5 and 632.6 do not apply to the parties to a communication, the Court of Appeal reasoned, section 632.7 should be construed similarly. (*Smith*, at pp. 851–852.) The Court of Appeal also saw it as "absurd" for a party to be held liable under section 632.7 for recording a call when it was "pure happenstance" whether the other party or parties were using cellular or cordless phones, as opposed to landline phones. (*Smith*, at p. 853.)

Finally, the Court of Appeal also saw its reading of section 632.7 as accordant with the relevant legislative history. The court observed that in materials generated during legislative deliberations regarding Assembly Bill No. 2465 (1991–1992 Reg. Sess.) (hereinafter Assembly Bill 2465), the measure through which section 632.7 was added to the Penal Code, the

4

Legislature "never shows any concern about recording by parties." (*Smith*, *supra*, 43 Cal.App.5th at p. 859.)

We granted review.

## II.   DISCUSSION

The discussion below proceeds as follows.   We first examine the text of section 632.7(a), which we determine is most naturally read as prohibiting both parties and nonparties from intentionally recording a covered communication without the consent of all parties to the communication.   Because the text conceivably could support the Court of Appeal's interpretation as well, however, we also consult the legislative history and public policy as additional tools to ascertain the Legislature's intent.   Upon review of these resources, we conclude that this section applies to the intentional recording of a covered communication regardless of whether the recording is performed by a party to the communication, or by a nonparty.

### A. General Principles

" ' "When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.   We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.   If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.] 'Furthermore,

we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.' " ' " (*Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 856–857.) The interpretation of a statute presents a question of law that this court reviews de novo. (*People v. Jimenez* (2020) 9 Cal.5th 53, 61; *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.)

### B. The Context and Provisions of Section 632.7

Section 632.7 is part of the Invasion of Privacy Act (§ 630 et seq.). As we explained in *Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 768–769 (*Flanagan*), as originally enacted in 1967 this statute replaced "prior laws that permitted the recording of telephone conversations with the consent of one party to the conversation. [Citation.] The purpose of the act was to protect the right of privacy by, among other things, requiring that all parties consent to a recording of their conversation."

A foundational component of the act, section 632, provides for liability when "[a] person . . . intentionally and without the consent of all parties to a confidential communication . . . uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio." (*Id*., subd. (a).) Other provisions within the statutory scheme reflect updates that have been made from time to time in response to the emergence of new communication devices. The Legislature augmented the statutory scheme in 1985, 1990, and 1992 "to take account of privacy issues raised

by the increased use of cellular and cordless telephones. (See § 632.5, added by Stats. 1985, ch. 909, § 3, p. 2902; § 632.6, added by Stats. 1990, ch. 696, § 4, p. 3269; § 632.7, added by Stats. 1992, ch. 298, § 6, p. 1216.) In enacting the first of these amendments[, the Cellular Radio Telephone Privacy Act of 1985], the Legislature found that 'the advent of widespread use of cellular radio telephone technology means that persons will be conversing over a network which cannot guarantee privacy in the same way that it is guaranteed over landline systems.' (Stats. 1985, ch. 909, § 2, p. 2900; similar language as to cordless telephones appears in Stats. 1990, ch. 696, § 2, p. 3268.) Responding to the problem of protecting the privacy of parties to calls involving cellular or cordless telephones, the Legislature prohibited the malicious interception of calls from or to cellular or cordless phones (§§ 632.5, 632.6) and the intentional interception or recording of a communication involving a cellular phone or a cordless phone (§ 632.7)." (*Flanagan*, at pp. 775–776.)[2]

This case concerns the most recent of the revisions discussed in *Flanagan*. Section 632.7(a) provides, "Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline

---

[2] As will be explained in part II.C, section 632.7 does not prohibit the "intentional interception or recording" of a covered communication (*Flanagan, supra*, 27 Cal.4th at p. 776); it is concerned instead with the intentional recording of an intercepted or received communication.

telephone, or a cordless telephone and a cellular radio telephone, shall be punished" in the manner the section proceeds to describe. (See also § 637.2 [specifying statutory damages and other remedies for violations of § 632.7].) Subdivision (b) of section 632.7 provides for certain exceptions to this prohibition, and subdivision (c) defines or explains some of the terms as used within the section.[3]

The Court of Appeal's decision below was the first published opinion by a California appellate court to have specifically addressed whether section 632.7 applies to the intentional recording of a communication by a party. The Court of Appeal's interpretation of section 632.7 departs from the majority view of the federal district courts that have considered the same issue. Some of these courts have concluded that the text of section 632.7(a) unambiguously prohibits a party from recording a protected communication without the consent of all other parties. (E.g., *Montantes v. Inventure Foods* (C.D.Cal.,

---

[3] Within section 632.7, subdivision (c), "cellular radio telephone" is defined as "a wireless telephone authorized by the Federal Communications Commission to operate in the frequency bandwidth reserved for cellular radio telephones." (*Id.*, subd. (c)(1).) "Cordless telephone" is defined as "a two-way, low power communication system consisting of two parts, a 'base' unit which connects to the public switched telephone network and a handset or 'remote' unit, that are connected by a radio link and authorized by the Federal Communications Commission to operate in the frequency bandwidths reserved for cordless telephones." (*Id.*, subd. (c)(2).) Lastly, section 632.7, subdivision (c)(3) explains that " '[c]ommunication' includes, but is not limited to, communications transmitted by voice, data, or image, including facsimile." Several other terms used in section 632.7, including "intercepts," "receives," and "parties," are not similarly defined within the section, or for that matter anywhere in the code chapter in which they appear.

July 2, 2014, No. CV-14-1128-MWF(RZx)) 2014 WL 3305578, pp. *2–*4; *Ades v. Omni Hotels Management Corp.* (C.D.Cal. 2014) 46 F.Supp.3d 999, 1017–1018.) Other federal courts have regarded the text of section 632.7(a) as ambiguous but read the legislative history as evincing legislative intent that the statute would apply to parties and nonparties alike. (E.g., *Brinkley v. Monterey Fin. Servs., LLC* (S.D.Cal. 2018) 340 F.Supp.3d 1036, 1042–1043; *Simpson v. Best Western Intern., Inc.* (N.D.Cal., Nov. 13, 2012, No. 3:12-cv-04672-JCS) 2012 WL 5499928, pp. *6–*9.) Finally, a minority position aligns with the views of the Court of Appeal below and regards section 632.7 as concerned only with intentional recording by persons other than the parties to a communication. (*Young v. Hilton Worldwide, Inc.* (C.D.Cal., July 11, 2014, No. 2:12-cv-01788-R-(PJWx)) 2014 WL 3434117, p. *1.)

In interpreting section 632.7 as inapplicable to the parties to a communication, the Court of Appeal did not examine our decision in *Flanagan*, *supra*, 27 Cal.4th 766, which contains our most extensive prior discussion of section 632.7. In *Flanagan*, we resolved a split of authority regarding what amounts to a "confidential communication" that section 632, subdivision (a) protects from recording without the parties' consent. We agreed with the view that "a conversation is confidential if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded" (*Flanagan*, at p. 768), and rejected an alternative interpretation of the statutory language that we considered less protective of the parties' privacy (*ibid.*). In so holding, we emphasized that the preferred interpretation was more consistent with the protections conferred by sections 632.5, 632.6, and 632.7. These other provisions, we observed, all "protect against interception

or recording of *any* communication. When the Legislature determined that there was no practical means of protecting cordless and cellular phone conversations from accidental eavesdropping, it chose to protect all such conversations from malicious or intentional eavesdropping or recording, rather than protecting only conversations where a party wanted to keep the content secret." (*Flanagan*, at p. 776.) We later added, "Under the construction adopted here, the [Invasion of] Privacy Act is a coherent statutory scheme. It protects against intentional, nonconsensual recording of telephone conversations regardless of the content of the conversation or the type of telephone involved." (*Ibid*.; see also *id*., at p. 771, fn. 2 ["Section 632.7, enacted in 1992, prohibits intentionally intercepting or recording communications involving cellular telephones and cordless telephones. This prohibition applies to all communications, not just confidential communications."]; *Kearney v. Salomon Smith Barney, Inc.* (2006) 39 Cal.4th 95, 122 (*Kearney*) ["it is unlawful under California law for a party to a telephone conversation to record the conversation without the knowledge of all other parties to the conversation"].)

## C. The Language of Section 632.7, Read in Context, Favors an Interpretation of the Section as Applicable to Parties as Well as Nonparties

We now look more closely at the language of section 632.7(a), focusing upon its phrasing, "[e]very person who, without the consent of all parties to a communication, intercepts or receives and intentionally records . . . a communication . . . ."

The Court of Appeal read section 632.7(a) as contemplating liability only in situations in which a person (1) intercepts or receives a communication without the consent of all parties to the communication, and (2) intentionally records

the communication without the consent of all parties to the communication. As previously observed, the Court of Appeal relied on this construction of section 632.7(a) in concluding that recording by a party to a phone call is not prohibited under this provision because the parties to a call normally consent to other participants' "receipt" of their input.

A different interpretation of section 632.7(a) would read its consent language as directed at the recording component of the offense, with the section's "intercepts or receives" phrasing specifying the circumstances in which a person may become privy to a covered communication. Under this interpretation of section 632.7(a), there is no doubt regarding its applicability to parties as well as nonparties to a communication. Although parties might normally be regarded as consenting to the receipt of their communications by other parties to a call, this acquiescence would not, by itself, necessarily convey their consent to having these communications recorded.[4]

We conclude that the second of these interpretations represents the more plausible reading of section 632.7(a). Within section 632.7(a), the interception or receipt of a covered communication is not so much a discrete subject of consent as it is a description of the circumstances in which the prohibited act of *recordation* without proper consent may occur. Such a construction aligns with how phrasing comparable to that found

---

[4] The circumstances involved with certain kinds of communications may lead to a reasonable inference that a party sending a communication has consented to having it recorded by the intended recipient — recordation would be expected with a facsimile or text transmission, for example. (See § 632.7, subd. (c)(3) [defining "communication" as including facsimile transmissions].)

in section 632.7(a) would be understood in other contexts. Consider, for example, a rule providing that "any person who, without the prior consent of the court, receives a jury summons and fails to report to jury duty, shall be guilty of contempt." In this example, the receipt of the jury summons is obviously not the target of the consent language; it is simply a fact that, when coupled with an unconsented-to failure to appear, can lead to liability. The language of section 632.7(a) communicates a similar rule.[5]

This interpretation of section 632.7(a) finds some support elsewhere in the statutory scheme. When the Legislature added section 632.7 to the Penal Code through Assembly Bill 2465, it also amended section 633.5 to add a reference to section 632.7 as follows: "Nothing in Section 631, 632, 632.5, 632.6, *or 632.7* prohibits one party to a confidential communication from recording the communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication of" certain crimes. (Stats.

---

[5] One might also draw an analogy to the language in section 632, subdivision (a) prohibiting a person from, intentionally and without the consent of all parties to a confidential communication, using "an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." Just as liability under section 632 would not be avoided by the parties' consent to someone using an electronic amplifying or recording device for some purpose *other* than eavesdropping upon or recording a communication, the consent language in section 632.7(a) is not properly understood as separately directed at a discrete "intercepts or receives" component of the course of conduct proscribed by this section.

1992, ch. 298, § 9, p. 1218, italics added.)[6]  The inclusion of this reference to section 632.7 within section 633.5 suggests that the legislators who enacted Assembly Bill 2465 believed section 632.7 could apply to parties.[7]

Meanwhile, nothing within this scheme provides concrete evidence of a contrary intention.  As previously mentioned, the Court of Appeal regarded its interpretation as harmonizing section 632.7's provisions with those of sections 632.5 and 632.6, which apply when a person "maliciously and without the consent of all parties to the communication, intercepts, receives, or assists in intercepting or receiving a communication" involving a cellular or cordless telephone. (§§ 632.5(a), 632.6(a).)[8]  The Court of Appeal reasoned that it was difficult to fathom how a party could "maliciously" receive a communication.  (*Smith*, *supra*, 43 Cal.App.5th at p. 852.)  And because sections 632.5 and 632.6 do not appear to have parties in mind, the Court of Appeal determined, section 632.7 should be construed as similarly limited to nonparties.  (*Smith*, at pp. 851–852.)  In a related vein, LoanMe argues that the word "receives," as used in sections 632.5(a) and 632.6(a),

---

[6]  A similar reference to section 632.7 still appears in section 633.5, notwithstanding subsequent amendments to the latter section.

[7]  It is true that section 633.5 also references sections 632.5 and 632.6, which are less obviously applicable to parties.  But even if the Legislature may have been overcautious in adding these references to section 633.5, that does not mean that the later Legislature that enacted Assembly Bill 2465 should be understood as having added surplusage to the statute.

[8]  Section 632.6(a), but not section 632.5(a), includes language addressing a situation in which a conversation is conducted between a cellular phone and a cordless phone.

contemplates only persons who receive communications without the parties' consent, and that this word should carry the same meaning as it appears in section 632.7(a).

These arguments overlook important differences between the language within sections 632.5(a) and 632.6(a) on the one hand, and section 632.7(a) on the other. It is one thing to describe a person as someone who "*maliciously* and without the consent of all parties to the communication . . . intercepts . . . [or] receives . . . a communication" (§ 632.5(a), italics added; see also § 632.6(a) [same]), and another to address a person who "without the consent of all parties to a communication . . . intercepts or receives *and intentionally records* . . . a communication" (§ 632.7(a), italics added). The additional language regarding recordation within section 632.7(a), and section 632.7(a)'s lack of a malice requirement, function to describe a class of potential perpetrators that includes parties, even if sections 632.5(a) and 632.6(a) do not. Although it may be challenging to envision how a party could maliciously receive a covered communication, it is not so hard to grasp how a party could just receive such a communication, without malice. That, or interception, is all that section 632.7(a) requires when accompanied by intentional recording without the necessary consent.

Thus, if we had to decide upon an interpretation of section 632.7(a) based solely on the statutory language, we would conclude that this provision's prohibition of intentional recording without the consent of all parties should be construed as applicable to parties as well as nonparties. But even though we regard this as the most sensible reading of section 632.7(a), we cannot say that the statutory language is so clear as to be unambiguous. Therefore, we also review the pertinent

legislative history, which confirms our interpretation by shedding light on what the Legislature sought to accomplish by adding section 632.7 to the Penal Code. (See *Scher v. Burke* (2017) 3 Cal.5th 136, 148–150.)

### D. The Legislative History and Background of Section 632.7 Are Consistent with Its Application to Parties

The legislative history of Assembly Bill 2465 comports with our reading of section 632.7 as announcing a general prohibition against the intentional recording of a covered communication without the consent of all parties, regardless of whether the recording is performed by a party to the communication or by someone else.

Committee analyses of Assembly Bill 2465, as well as other materials within the legislative record, establish that section 632.7 responded to concerns that existing law did not prohibit the recordation of communications involving a cellular or cordless telephone. One committee analysis of the measure explained, "Under current law, it is only illegal to intercept a conversation transmitted between the [*sic*] cellular or cordless telephones. There is no prohibition against recording a conversation transmitted between cellular or cordless phones. By comparison, it is currently illegal to intercept or record a conversation between traditional telephones. There appears to be no sound policy reason behind this discrepancy." (Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 2465 (1991–1992 Reg. Sess.) as amended Mar. 9, 1992, p. 1, underscoring omitted; see also Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 2465 (1991–1992 Reg. Sess.) as amended June 1, 1992, p. 1; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2465 (1991–1992 Reg. Sess.) as amended June 1,

1992, pp. 2, 3.) These concerns apparently owed to a sense that communications involving cellular or cordless telephones might represent "radio" communications that section 632 expressly excludes from its purview, or that these communications could not be regarded as "confidential" under section 632 because they could be overheard by eavesdroppers using a radio scanner. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2465, at p. 3; Ops. Cal. Legis. Counsel, No. 27958 (Dec. 17, 1991) Invasion of Privacy, pp. 2, 5–6.)[9]

Providing additional context, another committee analysis of Assembly Bill 2465 described the rationale behind section 632.7 as follows: "According to the author, [¶] [t]he primary intent of this measure is to provide a greater degree of privacy and security to persons who use cellular or cordless telephones. Specifically, AB 2465 prohibits persons from recording conversations transmitted between cellular or cordless telephones. [¶] Under current law, it is only illegal to 'maliciously' intercept a conversation transmitted between the above-identified telephones. There is no prohibition against recording a conversation transmitted between cellular or cordless telephones. [¶] By comparison, it is currently illegal to 'intentionally' intercept or record a conversation transmitted between landline, or traditional, telephones. [¶] AB 2465 recognizes the distinction between traditional, landline

---

[9]     Whether a court should arrive at the same interpretation of section 632 as the one apparently accepted by the Legislature that passed Assembly Bill 2465 is an issue we need not address here. We note without further comment, though, that some federal case law regards section 632 as applicable to communications involving a cellular phone. (E.g., *Brinkley v. Monterey Fin. Servs., LLC, supra,* 340 F.Supp.3d at p. 1042.)

telephones and inherently, less secure (or more public) non-traditional cellular and cordless telephones. Most simply, landline telephones employ 'closed' wire-to-wire systems, whereas cellular and cordless telephones employ radio waves. Generally, there is a greater expectation of privacy with regard to the former technology than the latter technology. [¶] However, this does not mean that persons who use cellular or cordless telephones may reasonably anticipate that their conversations will be both intercepted and recorded. While there may be utility in retaining relatively unimpeded access to the public 'air waves,' there is no value in permitting private telephone conversations that employ the 'air waves' to be indiscriminately record[ed]. [¶] AB 2465 strikes the appropriate balance. The innocent, merely curious, or non-malicious interception of cellular or cordless telephone conversation will remain legal. However, it will be illegal to record the same conversations. Henceforth, persons using cellular or cordless telephones may do so knowing that their conversations are not being recorded." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2465, *supra*, at pp. 3–4, underscoring omitted; see also Assem. Conc. Sen. Amends. to Assem. Bill No. 2465 (1991–1992 Reg. Sess.) as amended June 1, 1992, p. 1 [also quoting the author's statement that the bill "prohibits persons from recording conversations transmitted between cellular or cordless phones"]; Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 2465, *supra*, p. 1 [similarly quoting the author's statement of intent].)

These descriptions of existing law, and of what Assembly Bill 2465 would accomplish, fairly convey that the enacting Legislature viewed section 632.7 as plugging a perceived hole in the statutory scheme that left communications involving

cordless and cellular telephones unprotected from recording. The apparent intent was not limited to protecting covered communications from interlopers acting without malice (the malicious interception or receipt of a communication already being covered by sections 632.5 and 632.6). The Legislature's aim was instead to more generally protect communications involving a cordless or cellular phone from intentional recordation without the parties' consent — and by doing so, better align the array of protections accorded to calls involving cellular or cordless phones with the safeguards applicable to calls involving only landlines.

This intent would not be vindicated by an interpretation of section 632.7 as applicable only to recording by nonparties. Were the section so construed, parties to a communication transmitted between a cellular or cordless phone and another device could covertly record the communication, leaving intact a substantial component of the "discrepancy" in protections that the Legislature detected and sought to address. (Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 2465, *supra*, at p. 1.) On this point, by the time Assembly Bill 2465 came before the Legislature it had long been established that section 632 prohibits parties as well as nonparties from recording a "confidential communication" within its parameters. (*Warden v. Kahn* (1979) 99 Cal.App.3d 805, 812; *Forest E. Olson, Inc. v. Superior Court* (1976) 63 Cal.App.3d 188, 191–192.) Were we to regard section 632.7 as inapplicable to the parties to a communication, we would have to conclude that the Legislature that enacted Assembly Bill 2465 was content with retaining a substantial gap between the protections attached to landline communications and those afforded to calls involving a cellular or cordless telephone. Such a view of legislative intent — which

would be in some tension with our previous assessment of the statutory scheme in *Flanagan, supra*, 27 Cal.4th at page 776 — would be difficult to square with the historical record.

It is true that one might infer from some committee analyses of Assembly Bill 2465 that the prospect of invasions of privacy by third parties was front-and-center in legislators' minds as they considered the bill. (See *Smith, supra*, 43 Cal.App.5th at p. 857.) But unlike the Court of Appeal, we do not regard recording by nonparties as the Legislature's sole focus or concern. Even if such scenarios loomed large as Assembly Bill 2465 proceeded through the Legislature, it is also apparent from the legislative history that the Legislature saw this measure as protecting the privacy interests that can be implicated whenever a communication is recorded without consent, regardless of whether it is a party or an outsider performing the recording. (See *People v. Wade* (2016) 63 Cal.4th 137, 143; *Grupe Development Co. v. Superior Court* (1993) 4 Cal.4th 911, 921; accord, *Oncale v. Sundowner Offshore Services, Inc.* (1998) 523 U.S. 75, 79 [noting that statutory prohibitions "often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed"].) And as explained *ante*, the language of section 632.7(a) is best read as addressing this more far-reaching concern by encompassing recordation by parties and nonparties alike. In short, even if certain scenarios involving third-party recordation of phone conversations may have been particularly salient when the Legislature passed Assembly Bill 2465, that does not mean section 632.7 applies only in those circumstances.

### E. Interpreting Section 632.7 as Applicable to Recording by Parties Better Promotes the Statutory Scheme's Goal of Protecting Privacy in Communications

Policy considerations enshrined in the statutory scheme also point toward an interpretation of section 632.7 as applicable to recording by parties as well as nonparties. Such an interpretation is in synch with expressions of intent, findings, and declarations within the Invasion of Privacy Act, and with what we have understood to be the Legislature's rationales for shielding certain kinds of communications from recording.

"In enacting [the Invasion of Privacy Act], the Legislature declared in broad terms its intent 'to protect the right of privacy of the people of this state' from what it perceived as 'a serious threat to the free exercise of personal liberties [that] cannot be tolerated in a free and civilized society.' (Pen. Code, § 630.) This philosophy appears to lie at the heart of virtually all the decisions construing the Privacy Act." (*Ribas v. Clark* (1985) 38 Cal.3d 355, 359 (*Ribas*).) As we observed in *Flanagan*, *supra*, 27 Cal.4th 766, in subsequently enacting the Cellular Radio Telephone Privacy Act of 1985, the Legislature found and declared, " 'the advent of widespread use of cellular radio telephone technology means that persons will be conversing over a network which cannot guarantee privacy in the same way that it is guaranteed over landline systems.' " (*Flanagan*, at pp. 775–776, quoting Stats. 1985, ch. 909, § 2, p. 2900.) But significantly, the Legislature also declared in the 1985 law that "parties to a cellular radio telephone communication have a right of privacy in that communication." (Stats. 1985, ch. 909, § 2, p. 2900.) The Legislature made similar findings and declarations when, five years later, it retitled the 1985 law the

Cordless and Cellular Radio Telephone Privacy Act and protected communications involving cordless phones from malicious interception and receipt. (Stats. 1990, ch. 696, §§ 1, 2, pp. 3267, 3268.)

The interpretation of section 632.7 we adopt is better aligned with these aims and declarations than a narrower interpretation would be. Recording a communication without the speaker's consent can implicate significant privacy concerns, regardless of whether a party or someone else is performing the recording. As we explained in *Ribas, supra*, 38 Cal.3d at pages 360–361, "While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." (See also *Flanagan, supra*, 27 Cal.4th at p. 775; *Sanders v. American Broadcasting Companies* (1999) 20 Cal.4th 907, 915.) The distinction stressed in *Ribas* owes to the fact that "secret monitoring denies the speaker an important aspect of privacy of communication — the right to control the nature and extent of the firsthand dissemination of his statements." (*Ribas*, at p. 361; *United States v. White* (1971) 401 U.S. 745, 787–788 (dis. opn. of Harlan, J.) ["[m]uch off-hand exchange is easily forgotten and one may count on the obscurity of his remarks, protected by the very fact of a limited audience, and the likelihood that the listener will either overlook or forget what is said, as well as the listener's inability to reformulate a conversation"]; Van Boven, *Electronic Surveillance in California: A Study in State Legislative Control* (1969) 57 Cal. L.Rev. 1182, 1231–1232.) To ensure that these concerns are addressed, the state has a

"strong and continuing interest in the full and vigorous application" of laws that vindicate the privacy rights that can be compromised when a communication is recorded without consent. (*Kearney*, *supra*, 39 Cal.4th at p. 125 [discussing section 632].)

LoanMe asserts that these privacy interests would not be significantly affected if this court were to adopt the Court of Appeal's construction of section 632.7 because section 632 would remain as a backstop, protecting confidential communications conducted over a cellular or cordless telephone from being electronically recorded without all parties' consent. The fundamental problem with this argument is not necessarily that it is incorrect — the question of section 632's precise scope not being squarely before us — but that it does not align with the Legislature's intent when it enacted section 632.7. Correctly or not, the Legislature that passed Assembly Bill 2465 and added section 632.7 to the Penal Code read section 632 differently and saw a gap in the statutory scheme that left cellular and cordless communications unprotected. This perceived hole would be adequately filled only if section 632.7 is construed as prohibiting the intentional recording of these communications absent the consent of all parties, without regard to whether the recording is performed by a party or by someone other than a party.

### F. LoanMe's Absurdity Argument Fails

Echoing the Court of Appeal below, LoanMe also argues that section 632.7 should not be interpreted as imposing liability on parties "on the basis of pure happenstance." (*Smith*, *supra*, 43 Cal.App.5th at p. 853.) As LoanMe puts it, "[h]ad Smith answered on a landline phone, section 632.7 could not apply under any interpretation had LoanMe been using a landline too.

But because of the happenstance that Smith allegedly answered LoanMe's call on a cordless phone, section 632.7 subjects LoanMe to criminal and civil liability." As had the Court of Appeal (*Smith*, at p. 853), LoanMe characterizes this result as "absurd."

This argument gives short shrift to section 632.7's complementary role in a larger statutory scheme. It is true that section 632.7 does not apply when all parties to a communication use landline phones. But section 632, which prohibits the use of an electronic device to intentionally record without proper consent "confidential communications" transmitted between such phones, frequently *will* apply to such a conversation. As construed in *Flanagan*, *supra*, 27 Cal.4th at page 768, section 632's protections adhere to communications in which a party has "an objectively reasonable expectation that the conversation is not being overheard or recorded." When one juxtaposes section 632's coverage, so defined, against that of section 632.7, it becomes apparent that as a practical matter the kind of phone used to receive a call will commonly make no difference in determining whether a caller is liable under some portion of the statutory scheme for recording a call without the consent of all parties.

Concededly, a discrepancy may exist between section 632's coverage and that of section 632.7 in situations where a communication is not confidential. Yet this difference, whatever it may be in practical terms today in light of current privacy expectations (see *Flanagan*, *supra*, 27 Cal.4th at p. 768), owes to the Legislature's apparent sense, decades ago, that cellular and cordless communications were incapable of being cast as confidential. Moreover, any perceived harshness in applying section 632.7 to a party's recordation of a nonconfidential

23

communication is lessened by the fact that a party can avoid liability under the statute by taking reasonable precautions, such as obtaining the consent to record the statute requires.  In this respect, LoanMe's absurdity argument resembles a position we rejected in *Kearney, supra,* 39 Cal.4th 95, in which we determined that section 632 applied prospectively to phone calls between the Georgia branch of a national brokerage firm and the firm's California clients.  (*Kearney*, at pp. 100–101.)  In *Kearney*, we responded to the defendant's concern that someone who received a call in Georgia would not necessarily know whether a caller was in California, and hence whether California law applied to the call.  (*Id.*, at p. 127.)  We observed that "there would appear to be no reason why an [employee of the defendant], when answering a call, could not simply inquire where the client is calling from." (*Ibid.*)  Similarly here, a party who wants to record a call that may fall within the strictures of section 632.7 is hardly in an impossible situation.[10]

-----

[10]    Amici curiae Project Veritas and the Project Veritas Action Fund (the Veritas amici) assert that constitutional considerations militate in favor of a construction of section 632.7 as concerned only with recording by nonparties.  We do not believe any such considerations carry sufficient force here as to compel this interpretation.    We observe, however, that especially insofar as the Veritas amici's concerns involve section 632.7's application to emerging uses of smartphones and similar devices, the Legislature has in the past amended the Invasion of Privacy Act to better address the use and misuse of new technologies.  Our sister branch may well take another look at the statutory scheme, should legislators believe that further updating is warranted.

## G. The Rule of Lenity Does Not Apply Here

LoanMe also argues that the rule of lenity applies here and supports an interpretation of section 632.7 as concerned only with recording by nonparties to a communication. We conclude that the circumstances before us do not justify the invocation of this principle.

The rule of lenity " 'generally requires that "ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation." ' " (*People v. Nuckles* (2013) 56 Cal.4th 601, 611.) But "[t]he rule of lenity does not apply every time there are two or more reasonable interpretations of a penal statute." (*People v. Manzo* (2012) 53 Cal.4th 880, 889 (*Manzo*).) On the contrary, this principle applies only " 'when " 'two reasonable interpretations of the same provision stand in relative equipoise . . . .' " ' " (*Ibid.*)

As in *Manzo*, *supra*, 53 Cal.4th at page 889, "We do not face that degree of uncertainty in this case" — or, frankly, any great uncertainty at all regarding legislative intent. Here, as there, "[t]he legislative history, the purpose of the statute, general public policy concerns, and logic all favor" the interpretation we adopt. (*Ibid.*) Of even more significance, so too does the statutory language. Accordingly, we decline LoanMe's invitation to apply the rule of lenity.[11]

---

[11] Smith argues that the rule of lenity has no application where, as here, a law with potential civil and criminal consequences is being invoked only by a civil plaintiff. (But see *Leocal v. Ashcroft* (2004) 543 U.S. 1, 11–12, fn. 8.) Our analysis makes it unnecessary to address this argument.

### III.    DISPOSITION

We conclude that section 632.7 prohibits parties as well as nonparties from intentionally recording a communication transmitted between a cellular or cordless phone and another device without the consent of all parties to the communication. The Court of Appeal did not address LoanMe's additional contentions that its activation of a beep tone gave Smith notice that their conversation was being recorded, and that by remaining on the call, Smith consented to having the call recorded.  We reverse the judgment of the Court of Appeal and remand the cause to that court for further proceedings consistent with our opinion, including consideration of these arguments as may be appropriate.

**CANTIL-SAKAUYE, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR , J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Smith v. LoanMe, Inc.
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XX 43 Cal.App.5th 844
**Rehearing Granted**

_____

**Opinion No.** S260391
**Date Filed:**  April 1, 2021
_____

**Court:**  Superior
**County:**  Riverside
**Judge:**  Sharon J. Waters

_____

**Counsel:**

Law Offices of Todd M. Friedman, Todd M. Friedman, Adrian R. Bacon and Thomas E. Wheeler for Plaintiff and Appellant.

F. Paul Bland; DiCello Levitt Gutzler, Amy E. Keller and Justin Hawal for Public Justice, P.C., as Amicus Curiae on behalf of Plaintiff and Appellant.

Ignacio Hernández; Megan Iorio and Alan Butler for Consumer Action, Consumer Federation of California and Electronic Privacy Information Center as Amici Curiae on behalf of Plaintiff and Appellant.

Finlayson Toffer Roosevelt & Lilly, Michael R. Williams and Jared M. Toffer for Defendant and Respondent.

Barr & Klein, Benjamin T. Barr, Stephen R. Klein; Litchfield Cavo and G. David Rubin for Project Veritas and Project Veritas Action Fund as Amici Curiae on behalf of Defendant and Respondent.

Akin Gump Strauss Hauer & Feld, Rex S. Heinke, Neal Ross Marder, Jessica M. Weisel and Rebecca A. Girolamo for American Medical Response, Inc., as Amicus Curiae on behalf of Defendant and Respondent.

Baker McKenzie, Edward D. Totino and Benjamin W. Turner for Atlantic Credit & Finance, Inc., as Amicus Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Adrian Bacon
Law Offices of Todd M. Friedman, P.C.
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
(866) 598-5042 ext. 648

Jared Toffer
Finlayson Toffer Roosevelt & Lilly LLP
15615 Alton Parkway, Suite 250
Irvine, CA 92618
(949) 759-3810